United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OLANDO GRAVES,                        )      No. C-05-1772 SC
                                      )
            Plaintiff,                )
                                      )      ORDER GRANTING
      v.                              )      DEFENDANT'S MOTION
                                      )      FOR SUMMARY JUDGMENT
                                      )
                                      )
JOHNSON CONTROL WORLD SERVICES,       )
INC. et al.,                          )
                                      )
            Defendants.               )
                                      )
_____ )

## I.    **INTRODUCTION**

Plaintiff Olando Graves ("Plaintiff" or "Graves") filed this action on July 29, 2004 in the Superior Court for Alameda County, asserting five causes of action against Defendant Johnson Control World Services, Inc.[1] ("Defendant" or "Johnson Control") stemming from Defendant's alleged racial discrimination against Plaintiff during Plaintiff's employment with Johnson Control from September 1999 to June 2003.  Defendant removed the action to Federal District Court pursuant to 28 U.S.C. § 1441(b), and now moves for summary judgment under Federal Rule of Civil Procedure 56

---

[1] Although Defendant was evidently sued erroneously as Johnson Control World Services, Inc., rather than as IAP World Services, Inc., the parties consistently refer to Defendant as "Johnson" or "Johnson Control," and so will the Court for the purposes of this Order.

("FRCP").  For the reasons set forth herein, Defendant's motion is hereby GRANTED and JUDGMENT entered in its favor.

**II.  <u>BACKGROUND</u>**

Plaintiff, an African-American male, began his employment with Defendant in September 1999 as an alarm technician.  <u>See</u> Defendant's Memorandum in Support of Motion for Summary Judgment at 1 ("Def.'s Mem.").  Upon his hiring, Plaintiff signed documents entitled (1) "Johnson Controls Acknowledgment of a Drug-Free Workplace"; (2) "Informed Consent and Release of Liability"; and (3) "Conditions of Employment."  <u>See</u> Declaration of Stan Nalley ¶4 Exhibits 1-3 ("Nalley Decl.").  In accordance with Defendant's companywide policy, the first 90 days of Plaintiff's employment were considered a training and probationary period.  <u>See</u> Nalley Decl. ¶5.  At the conclusion of Plaintiff's initial probationary period, however, Defendant renewed the probationary period for a second 90-day period.  <u>See</u> <u>id</u>. Exhibit 4 ("Ex.").  According to a January 20, 2000 memorandum addressed to Plaintiff, Defendant's reasons for reinitiating the probationary period included Plaintiff's persistent tardiness, failure to communicate with supervisors, and perceived abuse of sick leave and vacation time.  <u>See</u> <u>id</u>.  Plaintiff apparently satisfied the conditions of his second probationary period, although it is not clear from Defendant's January 20, 2000 memorandum when that period was to have ended.[2]

---

[2] This is because the memorandum states that the extension of the initial probationary period was to last 90 days, yet the memorandum also states that the extension was to commence on January 24, 2000 and conclude on May 30, 2000.  <u>See</u> Nalley Decl. ¶4

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

On June 8, 2000, Graves was suspended from work for three days and placed on "Conditional Employment status" for a period of six months as a result of an alleged failure to follow company "lockout/tagout" procedures that were required of employees responding to alarm malfunctions. See id. Ex. 5. Graves, in contrast, asserts that he was not the employee responsible for executing those procedures with respect to the alarm malfunction at issue, and alternatively contends that a supervisory employee refused to instruct Plaintiff on the particulars of the lockout/tagout procedures even after that employee had assigned Plaintiff to perform the lockout/tagout tasks. See Plaintiff's Memorandum in Opposition to Motion for Summary Judgment at 3 ("Pl.'s Mem."); Declaration of Olando Graves ¶10 ("Graves Decl.").

On January 20, 2003, Defendant changed its drug testing policy to mandate a drug test of any employee involved in a reportable accident. See Nalley Decl., Ex. 12-13. While the parties dispute the severity of events that took place on and around June 4, 2003, both Plaintiff and Defendant agree that Graves responded to a trouble call that morning, and that during the course of his activities, water splashed in Plaintiff's eye. See Graves Decl. ¶¶ 3, 6; Def.'s Mem. at 6. The parties further agree that shortly thereafter, Plaintiff notified his supervisor, Mike Turpin, of the status of the trouble call. Id. Although Plaintiff insists that he was not reporting an accident when he mentioned during that call that water had splashed in his eye and

_____

Ex. 4.

3

**United States District Court**
For the Northern District of California

was burning, <u>see</u> Pl.'s Mem. at 4, Defendant evidently considered Plaintiff's mention of a "bad" burning in his eye and his speculation that the liquid in his eye might have contained acid to be a report of a work-related accident.  <u>See</u> Nalley Decl. ¶ 20. Accordingly, Defendant asked Graves to visit the medical clinic to have his eye checked out by Defendant's medical staff.  <u>See</u> Declaration of Jill Moudy ¶3 ("Moudy Decl.").  While there, Defendant sought to administer a drug test to Plaintiff in accordance with Defendant's company policy, however Plaintiff refused.  <u>Id</u>. ¶4.  When subsequent efforts to perform the drug test were rebuffed, Plaintiff was dismissed from his position with Johnson Control for refusing to comply with company policy. Nalley Decl. ¶22.

Graves asserts that he was not notified of the change in company drug-testing policy, that an unnamed clinic receptionist told him that supervisory personnel had made a special request that Graves be tested for controlled substances, and that other, non-African-American employees were not drug tested following work-related accidents.  <u>See</u> Pl.'s Mem. at 4.  Graves has not provided any evidence to substantiate these claims, however, outside of his own declaration.

In addition to the foregoing, Graves has set forth a number of allegations in the Complaint that he contends evidence Defendant's anti-African-American animus.  For example, Graves alleges that (1) Defendant provided more comprehensive training to other, non-African-American employees, and then used the lack of training provided to Plaintiff as a reason for denying him

United States District Court
For the Northern District of California

promotions; (2) Defendant denied Plaintiff a promotion to the position of Level II alarm technician because of his race; (3) Defendant took certain higher-paying work away from Plaintiff and assigned it to other non-African-American employees; (4) Defendant refused to give Plaintiff a key to a certain area because of his race even though keys were provided to other, non-African-American employees; (5) Defendant stopped giving Plaintiff "lead pay" for his role as the lead technician in responding to service calls because of his race; (6) Defendant changed its policy with respect to compensation known as "call back pay" but selectively enforced its new policy against Plaintiff while failing to enforce it against other, non-African-American employees; and (7) Defendant refused to offer Plaintiff certain training provided to all Level II technicians despite Plaintiff's request to receive such training.  Complaint ¶¶ 27-38 ("Compl."). Aside from the allegations contained in the Complaint and repeated in Plaintiff's declaration, however, no evidence has been set forth to substantiate any of these claims.

Graves filed an administrative complaint with the California Department of Fair Employment and Housing ("DFEH") in August 2003, alleging that Johnson Control discriminated against him because of his race by terminating his employment.  See Deposition of Olando Graves, Ex. 2 ("Graves Depo.").  Graves filed a second administrative complaint with DFEH in April 2004, which made the same allegations yet included the claim that he was discriminated against with respect to his lack of training.  See id., Ex. 1. DFEH issued right to sue letters dated July 29, 2003, and August

5

2, 2004.   Compl., Ex. A; Graves Decl., Ex. D.

Discovery has been completed and the matter is set for trial beginning April 3, 2006.

**III.  LEGAL STANDARD**

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  A genuine issue of fact exists when the non-moving party produces evidence on which a reasonable trier of fact could find in its favor viewing the record as a whole in light of the evidentiary burden the law places on that party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252-56 (1986).

However, the adverse party may not rest upon the mere allegations or denials of his or her pleadings, and rather must present admissible evidence showing there is a genuine issue for trial.  See Brinson v. Linda Rose Joint Venture, 53 F.3d 1044, 1049 (9th Cir. 1995).  Summary judgment is therefore appropriate against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." Celotex 477 U.S. at 322-23.  The more implausible the claim or defense asserted by the opposing party, the more persuasive its evidence must be to avoid summary judgment, see Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), but "[t]he evidence of the non-moving party is to be believed, and all justifiable inferences are to be drawn in its

**United States District Court**
For the Northern District of California

1   favor." <u>Anderson</u>, 477 U.S. at 255.

2   **IV.  DISCUSSION**

3      Graves has alleged five bases for relief: (1)discrimination

4   in violation of the California Fair Employment and Housing Act,

5   Cal. Gov. Code § 12940 <u>et seq</u>.; (2) termination, discipline, or

6   demotion in violation of public policy; (3) breach of implied

7   and/or express contract of continued employment; (4) breach of

8   implied covenant of good faith and fair dealing; and

9   (5) intentional infliction of emotional distress.  Compl. ¶¶ 11-

10  69.  Johnson Control has asserted a variety of defenses in its

11  motion, including defenses based on the statute of limitations,[3]

12  inability to demonstrate disparate treatment or adverse employment

13  action, inability to prove the existence of a contract

14  guaranteeing employment, and inability to prove that Defendant's

15  conduct was beyond all bounds of decency.  Plaintiff has filed an

16  opposition to Defendant's motion.

17      A.   <u>California Fair Employment and Housing Act</u>

18      The California Fair Employment and Housing Act ("FEHA")

19  prohibits discrimination against a person based on race in

20  connection with the "terms, conditions, or privileges of

21  employment."  Cal. Gov. Code § 12940(a).  Although the law does

22  not speak to the question of precisely which terms and conditions

23  of employment are covered, courts have interpreted the language of

24

25      [3] Although the Court reviewed the argument and authority
    presented with respect to Johnson Control's statute of limitations
26  defense, the Court finds that it is not necessary to render a
    decision as to that defense given the Court's analysis as set forth
27  herein.  Accordingly, the Court expresses no opinion as to the
    validity of a defense based on the statute of limitations.

28

**United States District Court**
For the Northern District of California

the statute to mean that the alleged discrimination must constitute an "adverse employment action," where changes in the terms of employment are "substantial and detrimental." Horsford v. Board of Trustees of Calif. State Univ., 132 Cal. App. 4th 359, 373 (Cal. Ct. App. 2005); see Yanowitz v. L'Oreal USA, Inc., 36 Cal. 4th 1028, 1054-55 (Cal. 2005). As the Supreme Court of California recently noted, "adverse treatment that is reasonably likely to impair a reasonable employee's job performance or prospects for advancement or promotion falls within the reach of the antidiscrimination provisions of sections 12940(a) and 12940(h)." Yanowitz, 35 Cal. 4th at 1055.

In assessing claims brought under FEHA, California courts have looked to the framework established by Federal Courts applying federal antidiscrimination laws. See Guz v. Bechtel National, Inc., 100 Cal. 4th 317, 354 (Cal. 2000). In particular, California courts have adopted the three-stage burden-shifting test for weighing claims of disparate treatment as set forth by the United States Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Id. That test requires a plaintiff to first establish a prima facie case of discrimination, which will generally require evidence sufficient to support a finding that "(1) the plaintiff was a member of a protected class; (2) he was qualified for the position he sought or was performing competently in the position he held; (3) he suffered an adverse employment action, such as termination, demotion, or denial of an available job; and (4) some other circumstance suggests discriminatory motive." Id. at 355. The burden then shifts to

8

the employer to provide evidence that its action was taken for a legitimate, nondiscriminatory reason. Id. at 355-56. If the employer is successful in making that showing, the burden then shifts back to the plaintiff to show that the stated reason is a mere pretext, or to offer additional evidence of discriminatory motive. Id. at 356.

At the summary judgment stage, the "burden is reversed," meaning that the defendant bears the initial burden of demonstrating that the action has no merit. See Martin v. Lockheed Missiles & Space Co., 29 Cal. App. 4th 1718, 1730-31 (Cal. Ct. App. 1994). In practice, an employer will meet its burden by "present[ing] admissible evidence either that one or more of plaintiff's prima facie elements is lacking, or that the adverse employment action was based on legitimate, nondiscriminatory factors." See Caldwell v. Paramount Unified School Dist., 41 Cal. App. 4th 189, 203 (Cal. Ct. App. 1995). In such situations, summary judgment for the employer will be appropriate unless the plaintiff is able to "demonstrate a triable issue by producing substantial evidence that the employer's stated reasons were untrue or pretextual, or that the employer acted with a discriminatory *animus*, such that a reasonable trier of fact could conclude that the employer engaged in intentional discrimination or other unlawful action." See Cucuzza v. City of Santa Clara, 104 Cal. App. 4th 1031, 1038 (Cal. Ct. App. 2002) (emphasis original). To carry that burden, the plaintiff must produce "substantial responsive evidence." Hanson v. Lucky Stores, Inc., 74 Cal. App. 4th 215, 224 (Cal. Ct. App. 1999)

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

quoting <u>Lockheed Missles</u>, 29 Cal. App. 4th at 1735.

In this case, the Court finds that Johnson Control has met its burden of providing evidence to demonstrate either that its actions were taken because of legitimate, non-discriminatory reasons, or that the action or decision Plaintiff complains of is not substantial enough to constitute an "adverse employment action."  In contrast, the Plaintiff has submitted no evidence whatsoever outside of his own declaration that would establish that Defendant's proffered non-discriminatory reasons are pretextual, and has not introduced any other evidence that supports, even circumstantially, his theory that his former employer's decisions were the product of a discriminatory motive.

i.   <u>Extended Probationary Periods</u>

Plaintiff asserts that Defendant's decision to terminate his employment on two occasions - decisions that were subsequently reversed - and place him on extended probationary periods constituted discrimination.  <u>See</u> Compl. ¶¶ 24-26.  However, Defendant has proffered evidence showing that the reasons for taking disciplinary action were not discriminatory, but rather were motivated by Defendant's concern over Plaintiff's professional performance, specifically his persistent tardiness, perceived abuse of vacation and sick leave, and a failure to follow applicable safety procedures.  <u>See</u> Nalley Decl. ¶¶ 5-6, Ex. 4-5.  In response, Plaintiff has not introduced evidence demonstrating that Defendant's reasons are pretextual, but rather has chosen to rely on bald assertions that "the first employment issue...began as a discharge proceeding based on false and

**United States District Court**
For the Northern District of California

unfounded accusations of absenteeism and tardiness," and "[the suspension and second probationary period] was given to me for something that I did not do and for which I was not responsible." Graves Decl. ¶¶ 9-10.  However, aside from these statements, Plaintiff has not referred the Court to any deposition, document, or other piece of evidence that would help substantiate his claim. Accordingly, the Court finds that Plaintiff has failed to carry his burden under the shifting approach set forth in <u>McDonnell Douglass</u> and as implemented by <u>Caldwell</u> and <u>Cacuzza</u>, and that these two disciplinary proceedings do not therefore lend any support to his claim that he was the victim of unlawful discrimination.

ii.  <u>Failure to Provide Training</u>

Similarly, Plaintiff claims that Defendant refused to provide Plaintiff with different types of professional training, including training on a "card access system" and specific training for Level II technicians.  <u>See</u> Compl. ¶¶ 27-28, 38.  With respect to Plaintiff's claim that he received less training than other similarly situated non-African-American employees, Defendant has proffered records demonstrating that Johnson Control paid more for Defendant's off-site training than for other non-African-American employees, and that Plaintiff attended at least as many training classes as other non-African-American employees, if not more.  <u>See</u> Nalley Decl. ¶¶ 10-11 Ex. 7-10.  As for Graves's claim that he did not receive card access training, when presented with a record that indicated he had been present at a training for "card key field hardware installation/configuration" on March 5, 2002,

11

Plaintiff testified that he was not sure whether that was the training to which he referred in the Complaint. See Graves Depo. at 151:7-21. Graves further testified that he does not know how much training his co-workers received and how much money was spent on their training. See id. at 152:3-23. Finally, with respect to Plaintiff's claim that he did not receive training appropriate for all Level II technicians, Plaintiff testified that he does not know precisely how much training was provided to other Level II technicians, and that, in fact, the information regarding time and money spent on employee training is maintained by Defendant. See id. at 152:3-154:4. Those records, however, demonstrate that Plaintiff was accorded as much or more training time than other non-African-American Level II technicians. See Nalley Decl. ¶¶ 10-11, Ex. 7-10. Plaintiff further acknowledged that Defendant had scheduled additional training for Plaintiff that was to take place sometime after Plaintiff's employment was terminated in June 2003. See Graves Depo. at 145:15-17.

In response, Plaintiff has again not proffered evidence to demonstrate that Defendant's nondiscriminatory reasons are pretextual, but rather relies on a reiteration of the allegations contained in the complaint and his assertion that, despite what the official records show, Plaintiff did not spend more time in training classes than his non-African-American peers. See Graves Decl. ¶ 12. This assertion stands in some contrast to Plaintiff's deposition testimony that Defendant is actually the entity that would maintain records of time spent in training classes, but in any event, is wholly insufficient to carry the burden imposed on

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

Plaintiff following Defendant's evidentiary showing.  Accordingly, the Court finds that the purported lack of training offers no support to Plaintiff's claim of discriminatory treatment.

    iii.  <u>Promotion to Level II Technician</u>

Plaintiff also alleges that he applied for a promotion to Level II technician, but was denied the promotion because of his race.  Compl. ¶ 32.  In response, Johnson Control has proffered Plaintiff's deposition testimony demonstrating that he was awarded the promotion after the employee originally promoted was discharged.  <u>See</u> Graves Depo. at 85:7-87:5.  Additionally, Plaintiff admits that, upon granting Graves the promotion, Defendant caused the salary and seniority adjustments to be retroactive, taking effect March 20, 2002, which coincided with the approximate date on which Plaintiff informally expressed his interest in the promotion.  <u>See</u> <u>id</u>. at 85:22-86:1; <u>see also</u> Nalley Decl., Ex. 6.

In response, Plaintiff asserts that the promotion was granted only because of his complaints of discrimination, and that he was "forced to endure obstacles that were not imposed on...the Caucasian man from outside the company who was first given the position." Graves Decl. ¶ 11.  Plaintiff has not identified what "obstacles" were placed before him, and has not offered any evidence that would substantiate his claim that Johnson Control awarded him the promotion solely because of his complaints of discrimination.  In any event, however, Plaintiff admits that he received the promotion, and that Defendant caused the benefits to be retroactively effective.  <u>See</u> Graves Depo. at 76:6-87:5.  Given

13

United States District Court
For the Northern District of California

these facts, the Court finds that Plaintiff has not proffered any evidence tending to show that Defendant's actions were discriminatory, and further finds that Defendant's actions do not rise to the level of an adverse employment action as a matter of law. See Yanowitz, 35 Cal. 4th at 1055.  Accordingly, Plaintiff's allegations with respect to his promotion to Level II technician do not offer any support to his FEHA claim.

     iv.  Refusal to Provide Plaintiff With a Key

     Similarly, Plaintiff asserts that Defendant refused to provide Plaintiff with a key to certain areas that remained locked, and that Defendant provided a key to other, non-African-American employees.  Compl. ¶ 34.  However, Plaintiff has not supported this allegation with any evidence, nor explained why the denial of a key to certain areas constituted an adverse employment action within the meaning of that term as it has been defined by California courts.  Those decisions make clear that, in order to be actionable, an employer's action must have a "substantial and material adverse effect on the terms and conditions of the plaintiff's employment." Akers v. County of San Diego, 95 Cal. App. 4th 1441, 1456 (Cal. Ct. App. 2002).  Decisions that amount to "a mere inconvenience or alteration of job responsibilities" are generally not actionable under FEHA.  See Thomas v. Department of Corrections, 77 Cal. App. 4th 507, 511 (Cal. Ct. App. 2000).  Because Plaintiff has not even alleged that the denial of a key adversely affected the terms or conditions of his employment, and because the Court finds that such action, even if proved, does not rise to the "substantial and material adverse effect" standard,

14

this allegation does not lend support to Plaintiff's claim.

> v.   Defendant's Policy Regarding Delivery Order Work, Lead Pay, and Call Back Pay

Graves has also alleged that Defendant discriminated against him with respect to (1) assigning higher-paying delivery order work; (2) designating employees to serve as the "technical lead" on calls, thereby qualifying them to receive "lead pay," and (3) by selectively enforcing its policy with respect to computation of "call back" pay.  Compl. ¶¶ 33, 35-37.  In response, Defendant has set forth legitimate, nondiscriminatory reasons for the changes in policy, and has proffered evidence demonstrating that other, non-African-American employees were treated equally or less favorably than Plaintiff.

For instance, with respect to assignment of delivery order work, Defendant asserts that a decision was made, as a company policy, to shift responsibility for that work from the Trouble Call and Preventative Maintenance Department to the Engineering Department.  See Nalley Decl. ¶¶ 13-14.  Defendant has further proffered a comparison of the delivery order hours worked between Plaintiff and three other technicians in the Trouble Call department.  Id.  That comparison demonstrates that Plaintiff worked significantly more delivery order hours from the time of the reorganization to the time of his termination than any of his three co-workers, at least two of whom are Caucasian.  Id.  In response, Plaintiff has contested whether two of the co-workers used in Defendant's comparison of delivery order hours worked were working in the same department as Plaintiff during the relevant

United States District Court
For the Northern District of California

period, but has not alleged that they were subject to a different policy with respect to assignment of delivery order work, regardless of when they started.  See Graves Decl. ¶ 13. Furthermore, Graves has not challenged the hours comparison proffered by Defendant, nor has he challenged the fact that a policy shift occurred within Johnson Control regarding the manner in which delivery order work was to be assigned.  While Graves maintains that delivery order work was "taken away [from him] as a result of [his] race," he has failed to direct the Court to any evidence, direct or circumstantial, that would support this allegation.

With respect to lead pay policy, Defendant has proffered evidence showing that its policy concerning the assignment of technical leads was changed in December 2002.  See Nalley Decl. ¶ 15, Ex. 11.  Defendant has further proffered evidence to demonstrate that other, non-African-American employees were subjected to the policy.  See Nalley Decl. ¶ 16.  In response, Plaintiff has chosen not to introduce any evidence demonstrating pretext or other discriminatory motive, but rather relies on his bald assertion that "the reason [the lead pay policy] was changed was because of me and in a further successful effort to reduce my pay because of my race."  Graves Decl. ¶ 15.  At this stage of the proceedings, however, reliance on bald, unsupported assertions are wholly insufficient to meet the burden imposed on the plaintiff following a defendant's successful showing of a legitimate, non-discriminatory reason for its action.  See Cucuzza, 104 Cal. App. 4th at 1038; Hanson, 74 Cal. App. 4th at 224.  Accordingly,

**United States District Court**
For the Northern District of California

Plaintiff's allegation that Defendant's change in lead pay policy was discriminatory lends no support to his claim.

Similarly, with respect to call back pay policies, Johnson Control issued a clarification of company policy in December 2002. See Nalley Decl. ¶ 17, Ex. 12.  Defendant has set forth a race-neutral reason for the clarification - to prevent abuses and eliminate ambiguity - and has further asserted that the policy affected up to fifteen employees of all different races at any given point after the update.  Id.  Furthermore, Plaintiff himself asserted that the only manner in which the policy clarification affected his employment was by requiring him to report arrival and departure times to a designated entity.  See Graves Depo. 122:1-9.

In response, Plaintiff asserts only that the "reason [the call back policy] was changed was because of me and in a further successful effort to reduce my pay because of my race."  Graves Decl. ¶ 16.  Even aside from the fact that Plaintiff again has not bothered to introduce any evidence to refute Defendant's showing of a legitimate, non-discriminatory reason for its action, the Court finds that the change in call back policy does not constitute an adverse employment action because it does not rise to the level of having a "substantial and material adverse effect on the terms and conditions of the plaintiff's employment."  See Akers, 95 Cal. App. 4th at 1456.  Accordingly, Plaintiff's allegation with respect to Defendant's change in call back policies does not support Plaintiff's claim.

//

//

17

vi.  <u>Defendant's June 2003 Termination of Plaintiff</u>

Finally, Plaintiff claims that Defendant discriminated against him by wrongfully terminating his employment following Defendant's refusal to submit to a drug test. Compl. ¶¶ 42-43. While Plaintiff acknowledges that Defendant changed its drug testing policy to broaden the circumstances in which an employee could be tested, <u>see</u> Compl. ¶ 42, Plaintiff asserts that Defendant intentionally failed to notify Plaintiff of the change because of his race, and that, in any event, the circumstances that required Plaintiff to visit the company medical clinic on June 4, 2003, did not constitute a "work related injury" such that a mandatory drug test would be triggered under the terms of the revised policy. <u>See</u> Compl. ¶ 43.

In response, Defendant has proffered evidence demonstrating that the revised drug testing policy was placed in effect, company-wide, on January 20, 2003. <u>See</u> Nalley Decl. ¶ 19, Ex. 13. Johnson Control asserts that the policy was posted in areas accessed by employees, and that the terms of the policy were discussed with employees. <u>Id</u>. According to Defendant, the two voice messages Plaintiff left for his supervisor notifying him of the status of the trouble call Plaintiff was responding to on the morning of June 4, 2003, constituted a report of a work-related injury because, Defendant asserts, Plaintiff related that a liquid, possibly containing acid, splashed in his eye and was causing substantial irritation. <u>See</u> Declaration of Mike Turpin ¶¶ 4-5 Ex. 1. In accordance with the revised drug policy, Defendant insisted that Plaintiff submit to a test for controlled

18

United States District Court

For the Northern District of California

substances, and following Plaintiff's repeated refusals, decided to terminate Plaintiff's employment after a review of Plaintiff's actions was conducted by a human resources employee and the General Manager.  See id. ¶ 21.  Defendant has further proffered evidence demonstrating that other, non-African-American employees have been required to submit to drug tests following a wide variety of workplace accidents.  See Declaration of Jill Moudy ¶ 9 Ex. 2-6 ("Moudy Decl.")(documenting drug tests following a finger injury, lower back strain, and a bug bite).

In response, Graves asserts that Defendant's initial request that Plaintiff submit to a drug test was not the result of adherence to company policy, but rather was undertaken upon special request of the Manager of the Environmental Health, Quality and Safety Department.  Graves Decl. ¶ 18.  Graves contends that his source of information on this point was the receptionist at the clinic, yet for reasons unknown to this Court, Plaintiff evidently declined to seek a sworn declaration from the receptionist to substantiate this assertion, and apparently did not take her deposition.  Plaintiff has not proffered any evidence that would challenge Defendant's documentation with respect to the effective date of the revised drug testing policy, its requirements, or Defendant's contention that drug tests were administered to employees of different races following a variety of workplace accidents and injuries.

Once again, Graves has chosen to forego the traditional method of defeating a motion for summary judgment - that of proffering evidence that creates material issues of fact

United States District Court
For the Northern District of California

appropriate for resolution at trial - in favor of exclusive
reliance on his own declaration, which is comprised of assertions
based on Plaintiff's own beliefs yet devoid of any reference to
actual evidence that might support his contentions.  While such
allegations may well suffice to defeat a motion to dismiss, this
matter is long past that stage - indeed, discovery has closed -
and it is time for the Court to examine what genuine issues of
material fact have been generated by clashes in the evidence on
record.  Because Plaintiff has utterly failed to marshal any kind
of evidence that would tend to support his allegations, even
circumstantially or inferentially, the Court finds that there are
no genuine issues of fact for trial, and that Defendant is
entitled to judgment as a matter of law on Plaintiff's FEHA claim.

    B.    Violation of Public Policy

    Graves has alleged that Defendant's actions, detailed above,
constitute a violation of the public policy of the State of
California.  Compl. ¶¶ 45-53.  Plaintiff relies on Article I,
Section 8 of the California State Constitution as furnishing the
legal basis for his claim.  Id. ¶ 52.  That section prohibits
"disqualif[ying] [a person] from entering or pursuing a business,
profession, vocation, or employment because of sex, race, creed,
color, or national or ethnic origin."  CAL. CONST. art. I § 8.

    However, because Plaintiff has not alleged any additional
facts or set forth any evidence specific to his claim for a
violation of public policy, the Court's analysis of Graves's FEHA
claim indicates that there are no genuine issues of material fact

United States District Court

For the Northern District of California

1   with respect to Plaintiff's Second claim that would warrant

2   preservation for trial.  Cf. Hanson v. Lucky Stores, Inc., 74 Cal.

3   App. 4th 215, 229 (Cal. Ct. App. 1999) (concluding that "because

4   [plaintiff's] FEHA claim fails, his claim for wrongful termination

5   in violation of public policy fails.").  Although a claim for

6   violation of public policy could theoretically implicate different

7   substantive or procedural elements than claims brought under FEHA,

8   the point remains that, at bottom, Plaintiff bears the burden of

9   proffering some evidence that would rebut Defendant's evidentiary

10   showing, thereby creating a genuine issue of fact precluding

11   summary judgment.  As set forth in Section A, supra, this Court

12   finds that Defendant has set forth evidence either demonstrating

13   legitimate, race-neutral reasons for its actions, or has

14   introduced proof that Plaintiff was not treated less favorably

15   than other, similarly-situated non-African-American employees.  In

16   response, Plaintiff has not proffered evidence that would create a

17   dispute for resolution at trial, but rather has relied on his own

18   declaration, which is rife with allegations of improper racial

19   motive behind Defendant's actions, yet devoid of any reference to

20   other evidence, of any kind, that would support these allegations.

21       At this stage of the proceedings, and where Defendant has set

22   forth a great deal of evidence negating essential elements of

23   Plaintiff's case, exclusive reliance on a declaration of

24   Plaintiff's own opinion disputing Defendant's evidence is plainly

25

26

27

28                                    21

insufficient to create a genuine issue of fact.  <u>See</u> FRCP 56(e)

("an adverse party may not rest upon the mere allegations and

denials of the adverse party's pleading, but...by affidavits or as

otherwise provided...must set forth specific facts showing that

there is a genuine issue for trial.").  Accordingly, the Court

finds that Defendant is entitled to summary judgment in its favor

on Plaintiff's claim for violation of public policy.

       C.   <u>Breach of Implied and/or Express Contract of Continued
Employment and Breach of Covenant of Good Faith and Fair
Dealing</u>

Plaintiff's Third and Fourth claims assert that Defendant's

allegedly discriminatory conduct violated a contract of continued

employment and the covenant of good faith and fair dealing.

Compl. ¶¶ 55-64.

In response, Defendant has set forth evidence demonstrating

that, upon beginning his employment with Johnson Control, Graves

signed a "Conditions of Employment" letter, which provided that:

    No employment contract exists between the Company and me and
    nothing in this document, any Company policy, Standard
    Practice Instruction (SPI), handbook, or any other Company
    document implies that any contract exists.  No supervisor,
    manager, or other representative of the company, other than
    the President or the President's designee, has the authority
    to enter into any agreement for employment for any specified
    period of time.  Either the Company or I may terminate the
    employment relationship, at any time, without notice.

Graves Depo. at 189:17-190:12, Ex. 17.  Plaintiff does not contend

that any other document provided that he could only be terminated

for cause, but rather asserts that a human resources employee

22

responsible for Plaintiff's orientation mentioned to him that his

employment could only be terminated for just cause. <u>See</u> Graves

Depo. at 130:13-131:3. However, Plaintiff does not assert that

Defendant's President or his designee ever entered into an

agreement with him that would modify the terms of the Conditions

of Employment letter, and, in any event, as the Court has noted

above, Plaintiff's termination occurred because of his refusal to

submit to a drug test as provided for by Defendant's internal

policies. Accordingly, for both of these reasons, the Court finds

that Defendant has negated an essential element of Plaintiff's

Third claim, and that Defendant is therefore entitled to summary

judgment in its favor on that claim.

Similarly, Plaintiff's Fourth claim for relief is based on

Defendant's alleged failure to "perform the terms and conditions

of the agreement fairly and in good faith." Compl. ¶ 61.

However, because Plaintiff cannot establish that the parties ever

entered into an agreement concerning the terms and conditions of

employment other than the "Conditions of Employment" letter

discussed above, Plaintiff cannot establish that Johnson Control

failed to carry out its obligations in good faith.[4] Rather, the

---

[4] The Court is aware that Plaintiff was a member of a union
with which Johnson Control entered into a Collective Bargaining
Agreement ("CBA"). That agreement certainly affected the terms and
conditions of employment, however, Plaintiff does not and cannot
assert that his Fourth claim for breach of implied covenant of good
faith and fair dealing is based on Defendant's breach of the CBA,
as that agreement designates a specific and exclusive procedure for
resolution of grievances. In fact, Plaintiff has already filed a

United States District Court
For the Northern District of California

evidence on record demonstrates that Defendant acted within its authority in terminating Plaintiff's employment for refusing to submit to a drug test following the June 4, 2003 incident.  As discussed above, Plaintiff's failure to introduce any evidence to refute the record established by Defendant renders judgment as a matter of law in Defendant's favor appropriate.

      D.   <u>Intentional Infliction of Emotional Distress</u>

     Plaintiff's Fifth claim is for intentional infliction of emotional distress.  Compl. ¶¶ 65-69.  Aside from realleging the facts already set forth in other sections of the complaint, Plaintiff additionally asserts that Defendant was aware that Plaintiff was in a vulnerable position; that Defendant occupied a much stronger bargaining position with respect to Plaintiff; and that Defendant deprived Plaintiff of his feeling of self-worth and security even though Defendant was aware of Plaintiff's weakened position.  <u>Id</u>.  Plaintiff claims that Defendant's conduct was outrageous and intentional, and that it was beyond all bounds of decency.  <u>Id</u>. ¶ 68.

     In response, Johnson Control argues that Graves cannot prevail on this cause of action because, as a matter of law, personnel management decisions are not "outrageous conduct beyond

---

motion to remand in this case, in which Plaintiff specifically argued that his Fourth claim is not based on the CBA, and does not even require interpretation of the terms of that agreement.  <u>See</u> Docket #6 at 2.  Plaintiff has apparently already exhausted his remedies under the CBA.

United States District Court<br/>For the Northern District of California

United States District Court
For the Northern District of California

the bounds of human decency."  Def.'s Mem. at 21, quoting Janken
v. GM Hughes Electronics, et al., 46 Cal. App. 4th 55, 80 (Cal.
Ct. App. 1996).  The court in Janken went on to note that the
remedy for personnel management decisions, even where improperly
motivated, is "a suit against the employer for discrimination."
46 Cal. App. 4th at 80.

However, Defendant overstates the reach of the Court's
decision in Janken to the extent that it argues that any decision
affecting personnel management is not actionable under an
intentional infliction of emotional distress theory, no matter
what the motivation.  See Def.'s Mem. at 21.  That proposition is
far too broad for the Janken decision to bear, and, in fact,
courts considering intentional infliction of emotional distress
claims have clearly ruled that such claims can be brought where
the "distress is engendered by an employer's illegal
discriminatory practices."  Accardi v. Superior Court, 17 Cal.
App. 4th 341, 353 (Cal. Ct. App. 1993), disapproved on other
grounds by Richard v. CH2M Hill, Inc., 26 Cal. 4th 798
(Cal. 2001); see also Hamilton v. Signature Flight Support Corp.,
No. C-05-409, 2005 WL 1514127 at *7 (N.D. Cal. June 21, 2005).

In order to sustain a claim for intentional infliction of
emotional distress, the conduct must be extreme and outrageous and
beyond all bounds of human decency.  See 5 Witkin, Summary of
California Law, Torts § 451 (10th Ed. 2005).  In this case, Graves

has alleged illegal conduct motivated by improper racial discrimination, which, if substantiated, could theoretically rise to the level to sustain a claim for intentional infliction of emotional distress. However, as explained above, Graves has done nothing to counter Defendant's evidence that either demonstrates race-neutral reasons for its conduct or proves that Graves was not treated differently than other, non-African-American employees. Because Defendant's evidence refuting charges of discriminatory conduct is unrebutted, the Court concludes that Defendant's actions were not extreme and outrageous and beyond the bounds of human decency, but were rather reasonable and proper management decisions not actionable through a claim for intentional infliction of emotional distress. See Janken, 46 Cal. App. 4th at 80. Accordingly, the Court finds that Defendant is entitled to summary judgment on this claim.

**V.   CONCLUSION**

In this case, Plaintiff has simply failed to present any evidence that could create a genuine issue of material fact for resolution at trial. The Court GRANTS Defendant's motion and enters JUDGMENT in Defendant's favor.

IT IS SO ORDERED.


Dated: March 13, 2006          _____

UNITED STATES DISTRICT JUDGE